IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CRIMINAL NO: 3:22-cr-00654 |
| vs. | |
| **CHRISTOPHER MICHAEL ALEXANDER** | **GOVERNMENT'S SENTENCING MEMORANDUM AND MEMORANDUM IN SUPPORT OF MOTION FOR UPWARD VARIANCE** |

On March 23, 2023, Defendant Christopher Michael Alexander pled guilty to Count 1 of the Indictment against him pursuant to a written plea agreement. The United States submits this memorandum in advance of Alexander's sentencing. The United States Probation Officer ("USPO") determined that the total offense level for Alexander is 34, which results in a guideline range of 151 to 188 months. The Government believes the Presentence Investigation Report ("PSR") properly calculated the Guidelines. Moreover, the Government believes that based on an evaluation of the 18 U.S.C. § 3553(a) factors a two-level upward variance from the current guidelines is an appropriate sentence in this case.

**I.   BACKGROUND[1]**

In July 2022, Alexander was named in a two-count indictment. ECF No. 2. Count 1 alleged Alexander attempted to entice and coerce a minor to engage in sexual activity in violation of Title 18, United States Code, Section 2422(b) and Count 2 alleged Alexander attempted to entice and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual

---

[1] The Government agrees with the factual summary contained in the revised PSR. Therefore, the Government highlights only the most relevant facts and key information pertaining to the case.

depiction of such conduct in violation of Title 18, United States Code, Section 2251(a). Alexander pled guilty to Count 1 of the Indictment on March 23, 2023.

The facts giving rise to the Indictment pertain to an undercover chat operation targeting child sex offenders initiated by multiple state and federal law enforcement agencies. Rev. PSR ¶ 17. During the operation, a law enforcement officer assumed the role of Maggie, a 13-year-old female, on Skout, an application based social networking site. *Id.* On May 19, 2022, Alexander communicated with Maggie through Skout, Kik, TextNow, and text messages. *Id*. Maggie told Alexander on five different occasions that she was only 13 years old. *Id*. at ¶¶ 18-21. Despite knowing she was a minor, Alexander proceeded to engage in sexually graphic and explicit messaging, including sending her pictures of his genitals and asking her to do the same. *Id*. After hours of messaging, Alexander asked where Maggie was located so that he could have oral and vaginal sex with her. *Id*. He then drove to her house, was arrested, and participated in a post-*Miranda* interview. During this interview, Alexander made admissions regarding prohibited sexual conduct with over 25 other minors. *Id.* at ¶¶ 25-34. Specifically, he admitted to digitally penetrating more than 25 babies while changing their diapers as well as digitally penetrating his fiancé's 10-year-old daughter under the guise of massaging a groin injury. *Id.*

In preparation for sentencing, the United States Probation Officer prepared a PSR. The USPO found the base offense level for Alexander is 28. *Id.* at ¶ 50. USPO added a two-level enhancement for Alexander's use of a computer during the offense. *Id.* at ¶ 51. USPO also added a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b) because Alexander's instant offense of conviction is a covered sex crime, neither §4B1.1 (Career Offender) nor subsection (a) of § 4B1.5 applied, and he engaged in a pattern of activity involving prohibited sexual conduct. *Id.* at ¶ 57.

The total offense level for Alexander was 34, which resulted in a guideline range of 151 to 188 months.

Alexander objects to the five-level enhancement for his pattern of activity involving prohibited sexual conduct. As explained below, the inclusion of a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b) is appropriate and warranted in this case. Further, based on the §3553(a) factors, the Government requests this Court grant an upward variance of two-levels, which would make Alexander's applicable guideline range 188-235 months.

## II.     ALEXANDER ENGAGED IN A PATTERN OF ACTIVITY INVOLVING PROHIBITED SEXUAL CONDUCT AND USSG § 4B1.5(b) APPLIES

Section 4B1.5(b) provides for an enhanced offense level where the defendant meets three criteria: (1) defendant's instant offense of conviction is a covered sex crime; (2) neither §4B1.1 (Career Offender) nor §4B1.5(a) applies; (3) and "the defendant engaged in a pattern of activity involving prohibited sexual conduct." Alexander meets all of three criteria and, therefore, a five-level enhancement is appropriate.

    a.  <u>Alexander's conviction is a covered sex crime</u>

Alexander's offense of conviction is a covered sex crime. As stated in Application Note 2 of § 4B1.5, "the instant offense of conviction must be a covered sex crime, *i.e.*: (A) an offense, perpetrated against a minor, under . . . (iii) chapter 117 of [Title 18, United States Code]; or (B) an attempt or conspiracy to commit any offense described in subdivisions (A)(i) through (iv) of this note." Further, minor is defined to include "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years." USSG § 4B1.5 App. Note 1.

Here, Alexander attempted to engage a minor to have oral and vaginal sex with him. In fact, the undercover law enforcement officer assuming the role of Maggie told Alexander five

different times over the course of their messaging that she was only 13 years old. Alexander was convicted of Attempted Coercion and Enticement of a Minor in violation of Title 18, U.S.C., Section 2242(b), which is set forth in Chapter 117. As such, Alexander's conviction is a covered sex crime for purposes of §4B1.5.

      b.  <u>Alexander is neither §4B1.1 (Career Offender) nor §4B1.5(a) applies</u>

Pursuant to the PSR and the guideline calculations, Alexander is not a career offender. Additionally, §4B1.5(a) does not apply because Alexander does not have a prior sex offense conviction. As such, he clearly meets this requirement of § 4B1.5(b).

      c.  <u>Alexander engaged in a "pattern of activity involving prohibited sexual conduct."</u>

Under Application Note 4(B) of § 4B1.5, the "defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." Further, an "occasion of prohibited sexual conduct" may be considered regardless of whether the conduct occurred during the course of the instant offense or resulted in a conviction. U.S.S.G. § 4B1.5 cmt n.4(B)(ii). Lastly, "'prohibited sexual conduct' includes any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), which includes eligible offenses in violation of state law." USSG § 4B1.5 App. Note 4(A). The Fourth Circuit has repeatedly upheld the application of this enhancement. *United States v. Patterson*, 726 Fed. Appx. 186, 187 (4th Cir. 2018) (finding "the record is flush with uncharged incidents…involving prohibited sexual conduct with minors" and concluding that the district court properly applied the five-level enhancement under USSG § 4B1.5(b)); *United States v. Foust*, 713 Fed. Appx. 230, 231 (4th Cir. 2018); *United States v. Dowell*, 771 F.3d 162 (4th Cir. 2014) (upholding application of USSG § 4B1.5(b) and sentencing defendant to 960 months incarceration).

4

In addition to Alexander's instant offense of conviction, Alexander admittedly violated S.C. Code 16-3-655(A)(1), First-Degree Criminal Sexual Conduct with a Minor, which prohibits sexual battery of a victim who is less than eleven years of age, on numerous occasions. "Sexual battery" is "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C. Code 16-3-651(h).

Here, Alexander sexually battered numerous minors under the age of eleven and, therefore, engaged in "prohibited sexual conduct" for purposes of § 4B1.5 when, according to his own admissions, he digitally penetrated 25 babies and "slip[ed] against" his fiancé's daughter's vagina "six times a day." Rev. PSR. ¶¶ 25-34. Further, Alexander's prohibited sexual conduct was a "pattern of activity." Any of the children Alexander molested added to his instant offense of conviction would establish a pattern of activity of prohibited sexual conduct. His actions are even more egregious as he has admitted to digitally penetrating over two dozen anonymous infants. This is further compounded by his admission that he penetrated his fiancé's daughter six times a day during the hundreds of occasions he would massage the child's groin. *Id.* at ¶¶ 28-29. As such, Alexander meets the criteria required to apply § 4B1.5(b).

        d.  <u>Alexander's Statements Establish a Pattern of Activity Involving Prohibited Sexual Conduct</u>

Alexander argues that the Government cannot prove that he engaged in a pattern of activity involving prohibited sexual conduct based on his "own statements with absolutely no other corroborating evidence." As an initial matter, "[f]ederal courts historically have exercised ... broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them." *Concepcion v. United States*, 142 S. Ct.

2389, 2398 (2022). Further, "[i]t is well established that, at sentencing, the district court 'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Pineda*, 770 F.3d 313, 318 (4th Cir. 2014) (U.S.S.G. § 6A1.3(a)); *see also* Fed. R. Evid. 1101(d)(3) (stating that the rules of evidence are inapplicable to sentencing proceedings).

The Fourth Circuit has repeatedly affirmed that the defendant bears "an affirmative duty" to show "that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Mondragon*, 860 F.3d 227, 233 (4th Cir. 2017) (citing *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990)). In *United States v. Randall*, 171 F.3d 195 (4th Cir. 1999), the Fourth Circuit Court of Appeals held the defendant has the burden of establishing the information contained in a presentence report is incorrect and that mere objections are insufficient. *See also United States v. Twitty*, 305 Fed. Appx. 950 (4th Cir. 2009); *United States v. Love*, 134 F.3d 595 (4th Cir. 1998). In *United States v. Fowler*, 58 F.4th 132, 151 (4th Cir. 2023), the Fourth Circuit explained that "[w]ithout such a showing, the government meets its burden of proving those facts by a preponderance of the evidence, and the district court is free to adopt the findings of the presentence report without more specific inquiry or explanation."

Courts have routinely applied guideline enhancements based largely on a Defendant's post-*Miranda* admissions. *See e.g. United States v. Hill*, 2023WL2674866 (4th Cir. 2023)(two-level enhancement for possessing three to seven guns applied based on defendant's post-*Miranda* statements regarding the number of firearms, type of firearms, and location of firearms); *United States v. Blue*, 536 F. App'x 353, 355 (4th Cir. 2013) (per curiam) (holding that the district court

6

did not err in crediting defendant's post-arrest statement to support drug quantities for purposes of sentencing); *United States v. Shelley*, 760 Fed.Appx. 657, 664-65 (11th Cir. 2019) (applying drug weight and two-level firearm enhancement based on defendant's admissions); *United States v. Olea*, 236 Fed. Appx. 728, 730 (2d Cir. 2007) ("defendant admissions can constitute 'specific evidence' sufficient to establish eligibility for a sentencing enhancement")).

In *United States v. Partaka*, the Fifth Circuit Court of Appeals upheld the defendant's admissions made during an FBI interview for the purposes of U.S.S.G. § 4B1.5(b)(1). 832 Fed. Appx. 912, 913 (5th Cir. 2021). The defendant admitted to being involved in an occasion of prohibited sexual conduct with a minor when he solicited sex from a 15-year-old girl in Dallas, Texas. *Id*. The defendant claimed the statements were unreliable, but he presented no evidence at sentencing to directly rebut his statements, which "were plausible in light of the record as a whole." *Id*. Even so, a defendant's uncorroborated admission, if reliable, may be the sole basis for a sentencing finding. *Id*. (citing *United States v. Barfield*, 941 F.3d 757, 763-67 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 1282, 206 L. Ed. 2d 264 (2020)). Thus, the statements met the necessary burden to be considered at sentencing. *Id*.

Here, Alexander *voluntarily* sat for a post-*Miranda* interview with law enforcement. He acknowledged and waived his rights. He knowingly and voluntarily provided these statements to law enforcement with the understanding they could be used against him. He has provided no basis in his objections for why his statements are unreliable. Over the course of that interview, he made countless inculpatory statements regarding his "guilty pleasure" of changing baby's diapers (and digitally penetrating infants) as well as to his sexual battery of two minor children. Rev. PSR ¶¶ 25-34. These statements alone establish by a preponderance of the evidence that he engaged in a pattern of activity involving prohibited sexual conduct.

7

Further, Alexander's position that additional corroboration is required is unsound based on the nature of his offense. Alexander specifically targeted these vulnerable victims (infants and young children) who were unable to communicate or allow for contemporaneous disclosure of the abuse. Yet, Alexander himself provided explicit detail as to at least one infant he sexually battered. He described his feelings and smell and taste of his fingers after digitally penetrating an infant girl. His statements alone as to his heinous conduct towards these infants is enough to establish a pattern of activity involving prohibited sexual conduct.

Two days before Alexander attempted to have oral and vaginal sex with 13-year-old Maggie, the mother of HJD's friend contacted law enforcement about HJD's disclosure to her daughter that she was being sexually abused at home. When law enforcement called HJD's mother, also Alexander's fiancé, HJD's mother told law enforcement the report was false. HJD, who Alexander admitted to digitally penetrating on numerous occasions while massaging her groin, was forensically interviewed. The interviewer noted that HJD's responses appeared rehearsed and, on at least one prior interview, HJD revealed that her mother had instructed her to lie about the sexual assaults. Following the most recent forensic interview, HJD was removed from her mother's care because her mother had not followed the safety plan in place and allowed Alexander to continue to have access to her minor daughter. In 2012, PJD was forensically interviewed after blood was found in her genitals and she disclosed to the school nurse and DSS that Alexander hurts her. Specifically, she said that Alexander told her she has some type of disease and that he saw throw up when he was wiping her. Rev. PSR ¶ 34. Similar to HJD, PJD altered her story and admitted to her interviewer that she could not remember what her mother told her to say.

Alexander argues that DSS investigated the claims that he sexually battered HJD and PJD and they were unfounded based on the recantation on the minor victims. Recantation in child

8

sexual abuse cases is, unfortunately, common. *See* **Ex. A**, Addressing Recantation in Child Sexual Abuse, National Children's Advocacy Center. Risk factors of recantation include unsupportive caretakers, offender is a romantic partner of the caregiver, child's age, and family pressure. In both HJD and PJD's cases, the minor children were young, had an unsupportive caretaker who influenced them to recant in their forensic interviews, and Alexander was in a romantic relationship with their mothers – all of which are risk factors for a child to recant. Additional corroboration outside of Alexander's inculpatory statements were likely thwarted by his girlfriend and fiancé coaching their children to lie and protect Alexander from punishment.

In sum, Alexander's statements regarding his sexual battery of dozens of children are enough to establish by a preponderance of the evidence that he engaged in a pattern of activity involving prohibited sexual conduct. As such, a five-level enhancement under USSG § 4B1.5(b) is warranted.

### III.     18 U.S.C. § 3553(a) SENTENCING FACTORS WARRANT AN UPWARD VARIANCE OUTSIDE OF THE GUIDELINES RANGE.

The United States Probation Officer properly calculated Alexander's base offense level and criminal history level with a commensurate guideline range of 151 to 188 months. However, a sentence in this range is not a reasonable sentence for this defendant. Therefore, the government moves for a variance based on the factors enumerated in 18 U.S.C., § 3553 and recommends a sentence of between 188 to 235 months.

The sentencing statute, 18 U.S.C. § 3553(a), requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[2]

---

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and

9

According to the revised sentencing scheme promulgated by and in the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the district court must first calculate the advisory Guidelines range and then consider the factors set forth in §3553(a). In making this determination, this Court should consider whether a traditional departure is necessary or appropriate to achieve the statutory purpose of sentencing and/or whether a variant sentence is necessary to achieve the statutory purposes of sentencing. *See generally United States v. Diosdao-Star*, 630 F. 3d 359 (4th Cir. 2011).

     A sentencing court may impose a sentence above the guideline range by granting either an upward departure or an upward variance. As the Fourth Circuit has explained, a departure is "a term of art under the Guidelines and refers only to non-Guidelines sentences—i.e., sentences outside the properly calculated Guidelines range—imposed for reasons recognized within the Guidelines' framework." *United States v. Williams*, 5 F.4th 500 at 506 (4th Cir.), cert. denied, 142 S. Ct. 625 (2021), citing *Irizarry v. United States*, 553 U.S. 708, 714 (2008) (cleaned up). "A variance, on the other hand, denotes a non-Guidelines sentence that is justified not by considerations in the Guidelines but by the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Id*. citing *United States v. Rivera-Santana*, 668 F.3d 95, 100 n.6 (4th Cir. 2012). A sentencing court is not required to provide a party notice, under Fed. R. Crim. P. 32(h) or otherwise, prior to imposing an upward variance. *Williams*, 5 F.4th 500 at 507.

     Here, as explained below, an examination of the § 3553(a) factors support a significant sentence for Alexander. A sentence of 188 to 235 months, two levels above advisory Guidelines

---

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

range, is appropriate and necessary to comply with the purposes set forth for sentencing pursuant to § 3553(a)

    a.    <u>Nature of Offense -- § 3553(a)(1)</u>

On May 19, 2022, Alexander wanted to have oral and vaginal sex with 13-year-old Maggie. He communicated with the Maggie through various cellular applications and text messages. Rev. PSR ¶¶ 18-21. Many of Alexander's written exchanges with Maggie contained graphic, extremely detailed sexual acts that Alexander wanted to perform with Maggie (i.e., "ride a dick," "lick you and pop your cherry," "lick around the hair so it don't get stuck in the back of the throat"). *Id.* He sent her unsolicited photographs of his penis after she told him she was 13 years old. *Id.* He even implored her to send him photographs of her fingers inserted inside her vagina in order to make sure she was ready for sex with him. *Id.* at ¶ 21. Alexander communicated over at least four different platforms to avoid detention from law enforcement and repeatedly asked Maggie to delete his messages. **Ex. B**, Defendant's Messages. These communications continued for hours, and Alexander repeatedly asked if Maggie was alone, if her house was in a private area, and admitted he was worried about getting caught, all of which culminated with Alexander traveling to Maggie's house to have sex with her. *Id.* at ¶¶ 18-21.

Unbeknownst to him, that 13-year-old was an undercover law enforcement officer posing as a minor. When he arrived at Maggie's house, he was greeted with a team to arrest him rather than the child he wished to have sex with. The electronic messages sent by Alexander provide a too vivid illustration of his state of mind during the offense and what his intentions were had Maggie been a child. The nature of the offense justifies a substantial sentence of 188 to 235 months.

      b.      History and Characteristics of Defendant – §3553(a)(1).

The history and characteristics of the Defendant as provided by Alexander are deeply troubling. After his arrest, Alexander detailed repeated sexual abuse on at least, according to Alexander, 27 different minor victims. He admitted that he digitally penetrated at least 25 infants and toddlers while changing their diapers, and in one case, did so in order to smell and taste his fingers afterwards. Rev. PSR ¶ 27. Alexander knew this behavior was wrong as he admitted he "felt guilty every time." *Id.* at ¶ 26.

The abuse didn't stop there. In 2012, his 10-year-old stepdaughter, went to the school nurse after finding blood on the tissue after using the bathroom. The child detailed for the nurse how Alexander hurt her when he washed her. In 2019, a mere *two days* prior to Alexander attempting to have sex with a 13-year-old, Lexington County Sheriffs Dept. received a call from a concerned mother, who detailed how Alexander's soon-to-be stepdaughter disclosed to her daughter that he was sexually abusing her. In his post-*Miranda* interview, Alexander stated that the soon-to-be stepdaughter had a groin injury that required him to massage her vaginal area on hundreds of occasions. He stated that *six times a day* his hand would slip, and he would digitally penetrate the 10-year-old girl. Forensic interviewers of both children noted that the children's later recantations appeared rehearsed or coached by their mothers.

These occasions demonstrate how Alexander has a history of integrating himself into families with young children. He takes on the role of caregiver which affords him the opportunity for touching children that gratifies him sexually, creates confusion for the children, and creates a quasi-legitimate excuse for such touching. Further, Alexander is demonstrably manipulative as evidenced by his girlfriend and wife coaching their children to not report against Alexander, which

12

allows him to continue to have access to the children and perpetuate his crimes against these children and possibly others.



These statements show that Alexander attempts to exaggerate and manipulate tests and those around him to avoid punishment and justify his predatory acts. He does not accept responsibility for his own actions and instead blames others or to justify his criminal behavior. As such, Alexander's nature and characteristics warrant a substantial sentence.

    c.    <u>Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense – §3553(a)(2)(A).</u>

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *United States v. Cobler*, 748 F.3d 570, 582 (4th Cir. 2014) (citing *Sarras*, 575 F.3d at 1220 (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable)). A 31-year-old man attempting to engage in an illegal sex act with a 13-year-old girl is a serious crime. Alexander sought out and targeted a minor who he believed to be home alone and then traveled to her house with the intention of having oral and vaginal sex with her. Here, the seriousness of the crime, taken with the need for just punishment and the overwhelming danger that Alexander poses to children in the community, weigh heavily in favor of a significant sentence.

> d. <u>Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant – §3553(a)(2)(B)-(C).</u>

Deterrence is important for crimes involving the sexual abuse of children, including attempted sex crimes. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Alexander fits well-within that class. In *United States v. Irey*, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d 1160, 1214 (11th Cir. 2010) (citing various studies and reports); *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly

recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). Alexander's purported past of sexual abuse of minors and his attempt to sexually exploit a 13-year-old girl evidence a high probability of recidivism. A strong need thus exists to protect children in the community from Alexander—now and well into the future.

Two factors suggest that Alexander poses an acute danger to children in the community. First, his admissions during a post-*Miranda* statement establish that he is an experienced, hands-on child sex abuser. Alexander expressly referenced past experiences where he sexually abused over 25 children. Second, Alexander has shown that contact with law enforcement alone does not deter his conduct or his sexual desires with children. Despite being accused of molesting his fiancé's 10-year-old daughter a mere two days prior, on May 19, 2022, Alexander sought out and attempted to have oral and vaginal sex with a 13-year-old. Contact with law enforcement and threat of criminal investigations alone do not stop Alexander from engaging in this behavior. A significant sentence is necessary in order to afford adequate deterrence from future criminal conduct.

Alexander's tendencies and pattern of conduct make him a dangerous predator of the most vulnerable children in our community, mere babies who cannot defend themselves in any way. He poses a constant and perpetual threat to minors now and will continue to do. A 188 to 235-month sentence protects children in the community for a considerable period. This sentence also signals to other individuals sharing Alexander's prurient interests—such as stepparents and relatives inclined to sexually abuse vulnerable children isolated in their custody or care, or other individuals with the same aim in search of parents not protecting their children—that such behavior is abhorrent and will be punished harshly within the District of South Carolina.

15

e.  The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct – §3553(a)(6).

The Fourth Circuit has upheld stern punishments for sexual abuse of minors and those who attempt to do so. *See United States v. Bowen,* 834 Fed.Appx. 796 (4th Cir. 2020) (upholding district court's decision to sentence defendant to 372 months' imprisonment for conspiracy to possess and distribute methamphetamine, and coercion and enticement of a minor, was procedurally and substantively reasonable); *United States v. Strieper,* 666 F.3d 288 (4th Cir. 2012) (upholding 420-month sentence for attempted enticement, receipt of child pornography, and possession of child pornography); *United States v. Battle,* 695 Fed.Appx. 677 (4th Cir. 2017) (upholding 300-month sentence for attempted enticement and pornography convictions); *United States v. Engle*, 676 F.3d 405, 424 (4th Cir. 2012) (sentencing defendant to 480 months on three counts of attempted enticement of a minor to engage in sexual activity); *United States v. Vinci,* 669 Fed.Appx. 119 (4th Cir. 2016) (upholding 235 sentence for defendant's enticement of a minor to engage in sexual activity); *see also United States v. Syed*, 616 F. App'x 973, 983 (11th Cir. 2015) (affirming 294-month sentence for attempted enticement of a fictional 14-year old); *United States v. Anderson*, 509 F. App'x 868, 871–878 (11th Cir. 2013) (affirming a 324-month sentence where the defendant had communicated with an undercover agent about having sex with an 11-year old and 14-year old).

Circuit courts have determined that an upward departure or variance is warranted for a defendant convicted under 18 U.S.C. § 2422(b) when the defendant's criminal history involving minor victims is extensive. *See e.g. United States v. Bishop*, 797 Fed.Appx. 208 (6th Cir. 2019)(noting that "without the § 4B1.5(b) enhancement, the defendant would have had a guidelines range of 151 to 188 months. But in view of the defendant's long history of 'acting out toward real kids,' the court indicated that it would have 'var[ied] up' to the statutory maximum of

16

240 months anyway—an increase of about 28 percent. A variance of this magnitude would not be substantively unreasonable on this record."); *United States v. Kapordelis*, 569 F.3d 1291 (11th Cir. 2009)(granting an upward variance to 420 months from guideline range of 262-327 months based, in part, on defendant's history of abuse and molesting minors for at least 20 years); *United States v. Begin*, 540 Fed.Appx. 86 (3rd Cir. 2013)(sentencing defendant to 240-month term of imprisonment that was an upward departure from advisory guidelines based on numerous instances in the defendant's past involving inappropriate conduct with minors); *Engle*, 676 F.3d at 424 (granting an upward variance from 262-327 months to 480 months based on the defendant's prior record and need to protect the public from the defendant).

Imposing a sentence of 188 to 235 months, or two levels above Alexander's advisory guideline range, would be sufficient, but not greater than necessarily in light of the other § 3553(a) factors. Further, it is reasonable in light of other cases within the Fourth Circuit and would not create sentence disparities among defendants similarly situated to Alexander.

## IV.     CONCLUSION.

For the reasons stated in this memorandum, the USPO accurately calculated Alexander's advisory guideline range and applied a five-level enhancement pursuant to § 4B1.5(b). Further, a sentence two levels above the current Guidelines is a sufficient, but not greater than necessary sentence to comply with the relevant sentencing factors.

RESPECTFULLY SUBMITTED,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY


BY: /s/ *Elle E. Klein*
     Elle E. Klein (Fed. Id. 12941)
     Assistant U.S. Attorney
     1441 Main St., Suite 500
     Columbia, South Carolina 29201
     (803) 929-3011
     Elle.Klein@usdoj.gov

Columbia, South Carolina
June 9, 2023