**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CR. NO. 3:22-CR-654-TLW** |
| | ) | |
| v. | ) | **DEFENDANT'S RESPONSE TO** |
| | ) | **GOVERNMENT'S MOTION FOR** |
| **CHRISTOPHER MICHAEL ALEXANDER,** | ) | **UPWARD VARIANCE** |
| | ) | |
| **DEFENDANT.** | ) | |

NOW COMES the defendant, CHRISTOPHER MICHAEL ALEXANDER, who respectfully submits this memorandum in opposition to Government's Motion for Upward Variance. ECF No. 56. In its memorandum in support of the motion, the government argues that 1) a five-level enhancement pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.5(b) is applicable in Mr. Alexander's case, and 2) the 18 U.S.C. §3553(a) factors support a two-level upward variance. Mr. Alexander respectfully submits this memorandum in opposition to that motion.

**MR. ALEXANDER DID NOT ENGAGE IN A PATTERN OF ACTIVITY INVOLVING PROHIBITED SEXUAL CONDUCT AND U.S.S.G. § 4B1.5(B) DOES NOT APPLY**

U.S.S.G. § 4B1.5(b) provides for a five-level enhancement where 1) the defendant's instant offense of conviction is a covered sex crime, 2) §4B1.1 and §4B1.5(a) do not apply, and 3) a "defendant engaged in a pattern of activity involving prohibited sexual conduct." Mr. Alexander does not contest that the government can prove the first two criteria. However, he submits that he did not engage in a pattern of activity involving prohibited sexual conduct. Specifically, he contends that the information relied upon by the probation officer as outlined in paragraphs 25 through 33 of the Presentence Investigation Report ("PSR") and in the Addendum to the PSR ("Addendum"), lack a sufficient indicia of reliability to support its probable accuracy;

1

is unreliable, untrue, and inaccurate; and the government cannot meet its burden to prove the information is true by a preponderance of the evidence.

Rule 32 establishes a burden-shifting framework for the development of the factual and legal issues relevant at sentencing. Fed. R. Crim. P. 32(i)(3)(B) ("At sentencing, the court . . . must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."). First, the Court must determine whether the "information has *sufficient indicia of reliability* to support its probable accuracy." *United States v. Pineda*, 770 F.3d 313, 318 (4th Cir. 2014) (citing U.S.S.G. § 6A1.3(a)) (emphasis added). *See also United States v. Gibbs*, 26 F.4th 760, 765–66 (7th Cir. 2022 (PSR must have "solid basis" before burden shifts to the defendant); *United States v. Marks*, 864 F.3d 575, 580 (7th Cir. 2017) (sentencing judge may rely on a presentence report only if it is "well-supported and appears reliable"); *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013) ("This reliability floor is a requirement of due process"); *United States v. Fennell*, 65 F.3d 812, 813–14 (10th Cir.1995) (reversing district court where sentencing enhancement was based solely on hearsay statement by defendant's ex-girlfriend with no other corroborating evidence); *United States v. Johnson*, 710 F.3d 784, 789 (8th Cir. 2013) ("[P]olice reports may be demonstrably reliable evidence of the fact that an arrest was made [but] they are significantly less reliable evidence of whether the allegations ... they contain are true."); *United States v. Christman*, 509 F.3d 299, 305 (6th Cir. 2007) (interpreting U.S.S.G. § 6A1.3 and Rule 32 "to allow a district court to consider hearsay evidence in sentencing so long as such evidence has sufficient or minimally adequate indicia of reliability and the defendant has an opportunity to rebut such evidence that he perceives is erroneous").

Second, only if the Court determines that the disputed information has sufficient indicia of reliability to support its probable accuracy under step one is the defendant required to make "an affirmative showing the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990); *see also United States v. Moreno-Padilla*, 602 F.3d 802, 809 (7th Cir. 2010) ("when a defendant's objection creates real doubt as to the reliability of the information in the PSR does the government have the burden of independently demonstrating the accuracy of the information"). This is not a preponderance of the evidence standard, rather the defendant need only articulate a reason why the information is untrue.

Finally, when the defendant articulates his reasons why the facts contained in the PSR are untrue, the burden is on the government to prove by a preponderance of the evidence that the information is true. *United States v. Gilliam*, 987 F.2d 1009, 1014 (4th Cir. 1993). Although defendants have the burden to demonstrate that information in a PSR is "untrue or inaccurate," not merely that the information is "unreliable," ultimately, "[t]he burden is on the [g]overnment to prove the facts needed to support a sentencing enhancement by a preponderance of the evidence." *United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013); *see also United States v. Catone*, 769 F.3d 866, 876 (4th Cir. 2014) (explaining the burden of proof is on the government to "prove the amount of loss by a preponderance of evidence"); *United States v. Steele*, 897 F.3d 606, 613 (4th Cir. 2018) (explaining the government bears the "burden to offer evidence supporting its restitution calculation," dispute over which is to "be resolved by the court by the preponderance of the evidence"); *United States v. Urbina-Mejia, 450 F.3d 838, 839* (8th Cir. 2006) ("The government must prove by a preponderance of the evidence that the disputed facts in the PSR are accurate."); *United States v. Logan*, 54 F.3d 452, 455 (8th

Cir.1995*)* ("If a defendant objects to factual allegations contained in the ... [PSR], a district court may not adopt the PSR's challenged facts until the defendant's objections have been heard and the government proves by a preponderance of the evidence that the facts stated in the PSR are accurate."); *United States v. Valenzuela*, 635 F. App'x 568, 570 (11th Cir. 2015) ("when a defendant objects to a fact in the PSR, the Government bears the burden of proving the disputed fact by the preponderance of the evidence"); *United States v. Bernardine*, 73 F.3d 1078, 1080 (11th Cir.1996) ("Although not as rigorous as the reasonable doubt or clear and convincing standards, *the preponderance standard is not toothless*. It is the district court's duty to ensure that the Government carries this burden by presenting *reliable and specific* evidence.").

Mr. Alexander submits that information relied upon by the probation officer in support of the § 4B1.5(b) enhancement lacks the "sufficient indicia of reliability to support its probable accuracy." Moreover, Mr. Alexander's articulation of facts below cast real doubt as to the reliability of the information in the PSR and the government cannot prove by a preponderance of the evidence that the information outlined in ¶¶ 25-33 of the PSR are true.

**I.     The statements made by Mr. Alexander during the post-Miranda interview lack the sufficient indicia of reliability to support their probably accuracy.**

"You can't take a swim *and* not get wet." This Albanian proverb illustrates a universal truth that defies the government's underlying premise as to why Mr. Alexander deserves both a five-level enhancement and an upward variance. The government cannot have it both ways — Mr. Alexander is forthright and sincere when it adversely impacts him, but "demonstrably manipulative" and untruthful when it does not. According to the government, Mr. Alexander has a "proclivity to exaggerate his personal history to appear impaired" and his statements to examiners at the Bureau of Prisons ("BOP") "show that Alexander attempts to exaggerate and manipulate tests and those around him to avoid punishment and justify predatory acts." By its

4

own admissions, the government effectively tells this Court that statements made by Mr. Alexander lack the sufficient indicia of reliability to support their probable accuracy. Paradoxically, however, the government urges this Honorable Court to believe every word he says about his alleged prior acts of sexual misconduct—acts that the government cannot, without persuading the Court to credit the unreliable statements made by Mr. Alexander, prove by a preponderance of the evidence. Thus, the Court should find that the statements made by Mr. Alexander during the post-*Miranda* interview, and the information derived therefrom, lack the sufficient indicia of reliability to support their probably accuracy.

II.     **Mr. Alexander has made an affirmative showing that the information in the presentence report is unreliable, and articulated the reasons why the facts contained therein are untrue or inaccurate.**

The information relied upon by the probation officer is unreliable and untrue. Mr. Alexander has a wide imagination. █████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████

Moreover, the government addresses the statements made by Mr. Alexander in his post-*Miranda* interrogation but does not address the results of the polygraph examination he also took during the interrogation. **Exhibit A**. The report does not conclude "No Deception Indicated." In

fact, it seems that the examiner did not even render an opinion which begs the question of whether the results of his examination would have adversely impacted the investigation.

Finally, the evidence shows that the two allegations of sexual abuse involving Mr. Alexander were investigated and deemed unfounded by the Department of Social Services ("DSS"). DSS implements a comprehensive approach to child abuse investigations. *See Human Services Policy and Procedure Manual, Chapter 7: Child Protective and Preventive Services*, S.C. DEP'T OF SOC. SERVS. (Jan. 2019);[1] *Child Abuse, Child Neglect: What Out of Home Caregivers Should Know If They Are Investigated*, S.C. APPLESEED L. JUST. CTR. (Mar. 2016).[2] Investigators, forensic interviewers, social workers, case managers—all licensed and experienced professionals tasked with determining whether children are at risk of abuse. They have investigated these allegations and did not find Mr. Alexander a risk to the children. In fact, it was only after law enforcement notified DSS of the instant offense, did DSS deem him a risk to children.

Based on these reasons, Mr. Alexander has satisfied his duty of articulating why the information in the presentence report is unreliable, and articulated the reasons why the facts contained therein are untrue or inaccurate.

**III.     The government cannot meet its burden to prove by a preponderance of the evidence that Mr. Alexander engaged in a pattern of activity involving prohibited sexual conduct.**

To reconcile with the unreliability of Mr. Alexander's statements, the government advances numerous groundless assertions. First, as a general matter, the government

---

[1] Available at https://dss.sc.gov/media/1897/cpps_2019-01-15.pdf.

[2] Available at https://dss.sc.gov/resource-library/forms_brochures/files/30253.pdf.

continuously cites to the PSR to support its factual conclusions. The only evidence submitted in support of the enhancement is a fact sheet on recantations in child sexual abuse by the National Children's Advocacy Center. However, the government has failed to present any expert testimony or reports to support its claim that a recantation occurred or that Mr. Alexander was anyway involved with "coaching" the children.

Second, conceivably due to the preposterousness that Mr. Alexander could have even obtained access to 25 babies, the government asserts that Mr. Alexander specifically targeted infants and young children "who were unable to communicate or allow for contemporaneous disclosure of abuse." However, the government has not presented testimony of a single witness alleging that they left their infant child in the care of Mr. Alexander alone without supervision. Surely, even if the government could produce such a witness, it would not meet the burden of proof by a preponderance of the evidence. There are no photos, videos, text messages, witnesses—not a single shred of corroborating evidence that would prove by a preponderance of the evidence that Mr. Alexander obtained access to 25 babies.

The government asserts that Mr. Alexander's statements alone are "enough to establish a pattern of activity involving prohibited sexual conduct." The government cites to *Partaka* arguing that "a defendant's uncorroborated admission, *if reliable*, may be the sole basis for a sentence finding." *United States v. Partaka*, 832 Fed. Appx. 912, 913 (5th Cir. 2021) (citing *United States v. Barfield*, 941 F.3d 757, 763-67 (5th Cir. 2019), cert. denied, 140 S. Ct. 1282, 206 L. Ed. 2d 264 (2020) (emphasis added). Again, the government effectively concedes that Mr. Alexander's statements are unreliable. Thus, *Partaka* does not support its conclusion. Moreover, the government cites to four cases where "courts have routinely applied guideline enhancements based *largely* on a Defendant's post-Miranda statements." However, all of those

cases are distinguishable. In *Hill*, the defendant's prior statements regarding the possession and discharge of additional firearms were supported by 1) photographs and videos taken on her cellphone of the firearms, 2) text messages found on her phone in which she was looking to acquire firearms, and 3) gunshot residue found on her hand. *See* Brief of Appellee., at 5, *United States v. Hill*, No. 21-4716, 2023 WL 2674866 (4th Cir. Mar. 29, 2023). In *Blue*, the drug quantities attributed to the defendant were derived from his prior statements *and* from a statement made by a co-conspirator who regularly purchased drugs from the defendant. *United States v. Blue*, 536 F. App'x. 353, 355 (4th Cir. 2013). In *Shelley*, the defendant did not dispute the presence of a firearm—the issue raised by the defendant was a question of law regarding whether he could be held accountable for a co-conspirator's possession of a firearm under U.S.S.G. § 2D1.1(b)(1). Reply Brief of Appellant., at 24, *United States v. Shelley*, 760 F. App'x 657, 664 (11th Cir. 2019). Thus, *Shelley* is not relevant. In *Olea*, the Second Circuit Court of Appeals vacated and remanded the district court's judgment based on "two clearly erroneous factual findings." *United States v. Olea*, 236 F. App'x 728, 729 (2d Cir. 2007) (Olea's admission that he had dropped "at least one man off in Minnesota and another in Detroit" is not sufficient to support a finding that more than one passenger had been dropped off at either location). Thus, none of these cases support the government's assertion that Mr. Alexander's uncorroborated and unreliable statement may be the sole basis for a sentence finding.

Third, the government relies on investigations of alleged sexual abuse of two minor children, HJD and PJD. The government makes factual and expert conclusions without providing any evidence to support those conclusions. First, the government states that "the interviewer noted that HJD's responses appeared rehearsed." However, the reports do not indicate whether that conclusion was made by a forensic examiner or by the agent investigating the case. **Exhibit**

8

**B**. Furthermore, as stated above, DSS had already conducted a thorough investigation and deemed both allegations to be unfounded.

Fourth, the government makes numerous "naked and unsupported" conclusions including an allegation that "additional corroboration outside of Alexander's inculpatory statements were likely thwarted by his girlfriend and fiancé coaching their children to lie and protect Alexander from punishment." This is purely speculative and conclusory and is the kind of "naked and unsupported" conclusions that courts have previously rejected. *See e.g. United States v. Gibbs*, 26 F.4th 760, 765–66 (7th Cir. 2022) ("If a PSR asserts nothing but a naked or unsupported charge, then a defendant's denial is enough to cast doubts on its accuracy") (internal quotations omitted). Notably, the government also states that "HJD revealed that her mother had instructed her to lie about the sexual assaults." However, what the report actually states is that HJD was forensically interviewed two previous times regarding other men that may have sexually assaulted her in the past and in one of *those* interviews, unrelated to Mr. Alexander, her mother told her to lie. *See* **Exhibit B**. There is no indication whatsoever that Mr. Alexander had ever coached any children to lie.

Finally, the government correctly points out that the Fourth Circuit has previously upheld the application of this enhancement. However, in none of those cases did the district court rely solely on uncorroborated, fanciful statements of a defendant that the government effectively conceded was an unreliable witness. *See* Brief of Appellant., at 4, *United States v. Patterson*, 726 F. App'x 186, 187 (4th Cir. 2018) (defendant raising a legal question not a factual one, about the applicability of U.S.S.G. § 4B1.5(b); conceding that the evidence showed that the defendant encouraged three boys in a span of two years to masturbate in front of him and purchased lubrication and condoms for their use); Brief of Appellee at 1-2, *United States v. Foust*, 713 F.

App'x 230 (4th Cir. 2018) (defendant's statements corroborated by flash drive containing over 200 pictures and videos of child pornography and subsequent search of hotel which showed same furniture, bedspread, and other items that matched the videos); *United States v. Dowell*, 771 F.3d 162, 171 (4th Cir. 2014) (evidence included several videos of defendant engaging in escalating sexual contact with a three-year-old girl and displaying the genitals of a five-year-old girl, a forensic examination of defendant's computers uncovered over 70,000 pornographic images and videos, of which depicted child pornography and sexually explicit drawings of minor, and expert testimony from a psychologist). In fact, Mr. Alexander was unable to locate a single case in which the Fourth Circuit affirmed application of the enhancement solely based on a defendant's uncorroborated and unreliable statements. *See* Brief of Appellee., at 8, *United States v. Ebert*, 61 F.4th 394, 406 (4th Cir. 2023) (government proved pattern by a preponderance of the evidence by victim testimony, possession of child pornography, videorecording of child masturbating, and asking another victim child to do the same); *United States v. Haas*, 986 F.3d 467 (4th Cir.), cert. denied, 211 L. Ed. 2d 136, 142 S. Ct. 292 (2021) (five-level enhancement based on his repeated sexual abuse of homeless eleven-year-old girl and evidence showed that defendant contacted informant multiple times to ask if she knew of any children he could photograph, and defendant's laptop contained over 10,000 photos depicting sadomasochism, including some involving toddlers); *United States v. Williams*, 783 F. App'x 269 (4th Cir. 2019) (evidence established that defendants engaged in multiple acts of prohibited sexual conduct with three minor girls because they trafficked the girls repeatedly over the life of the trafficking ring); Brief of Appellee., at 4-6, *United States v. Schellenberger*, 246 F. App'x 830, 832 (4th Cir. 2007) (defendant's admission that he took pornographic images of his daughter and a newborn nephew corroborated by disks which included those images); Brief of Appellee., at 6-10, *United States v.*

*Saddler*, 789 F. App'x 952, 955 (4th Cir. 2019) (victim, victim's mother and two additional witnesses testified that she was being prostituted by the defendant since she was 12; defendant advertised her online, sent her to migrant camps and at each camp five to ten men would pay to have sex with her).

Therefore, Mr. Alexander submits that the government cannot prove by a preponderance of the evidence that Mr. Alexander engaged in a pattern of activity involving prohibited sexual conduct. Thus, the PSR should be reduced by five levels, giving rise to an advisory Guidelines imprisonment range of 87-108 months' imprisonment.

### THE 18 U.S.C. §3553(A) FACTORS DO NOT WARRANT AN UPWARD VARIANCE OUTSIDE OF THE GUIDELINES RANGE

The government relies heavily on the information provided in ¶¶ 25-33 of the PSR in support of its motion for upward variance. However, as provided above, the information does not have sufficient indicia of reliability to support its probable accuracy, is untrue and inaccurate, and the government has not met its burden to prove their accuracy by a preponderance of the evidence. Therefore, Mr. Alexander submits that the Court should not rely on any information or arguments by the government related to the information he contests above.

 However, if Mr. Alexander were so cunning, why would he allegedly confess to the conduct outlined in ¶¶ 25-33 of the PSR? , and he will spend at least the next 10 years of his life in prison, without the benefit of programming due to the nature of the offense. This undoubtedly sends a strong message to the public that similar conduct will not be tolerated.

██████████████████████████████████████████████████

████████████████████████████████


## CONCLUSION

Based on the reasons stated herein, Mr. Alexander respectfully submits that a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b) is inapplicable and that a sentence of 120 months' imprisonment is appropriate.

Respectfully submitted,

s/ *SUHA S. NAJJAR*
Suha S. Najjar
Assistant Federal Public Defender
1901 Assembly Street, Suite 200
Columbia, South Carolina 29201
T: 803-724-6426
F: 803-765-5084
Attorney ID# 13597
Suha_Najjar@fd.org

June 12, 2023
Columbia, South Carolina

# EXHIBIT A
**(TO BE FILED UNDER SEAL)**

# EXHIBIT B
**(TO BE FILED UNDER SEAL)**